17950.   SPEIR & COMPANY *v.* ATLANTIC COAST LINE RAILROAD COMPANY.

1. Where goods are transported by a common carrier under an order-notify bill of lading, the delivery of the goods by the carrier to the person directed to be notified, without a surrender of the bill of lading, amounts to a conversion of the property by the carrier, and renders it liable in trover to the shipper.

2. Under an ordinary contract of open shipment, providing for unconditional delivery at a private side-track of the consignee, the carrier completes its contract for carriage and delivery by placing the goods upon the consignee's side-track as directed. *Georgia Cotton Co.* v. *Central of Ga. Ry. Co.,* 19 *Ga. App.* 576, 580 (91 S. E. 933). This is true for the reason that in such a case the carrier has done all it has agreed to do, and there is no reason why the person to whom the goods are consigned can not appropriate them without infringing upon the rights of the shipper. It does not necessarily follow, however, that the rule just stated would have application where the goods, although routed to a private siding, are transported under an order-notify bill of lading. Upon this proposition the authorities would seem to be in conflict (Ward *v.* Pere Marquette Ry. Co., 231 Mich. 323 (204 N. W. 120); Quinn-Sheperdson Co. *v.* Great Northern Ry. Co., 141 Minn. 100 (169 N. W. 422), and it might be the rule that in such a case the placement of the goods upon the side-track designated amounts to nothing more than a tender of delivery upon compliance by the order-notify consignee with the terms of the affreightment contract, since such a tender would not justify their unlawful seizure in violation of the terms of the bill of lading. Levers *v.* Atchison, T. & S. F. Ry. Co., 22 N. M. 599 (166 Pac. 1178, L. R. A. 1918A, 294); Conrad Schopp Fruit Co. *v.* Missouri Pac. R. Co., 115 Mo. App. 352 (91 S. W. 402); Quinn-Sheperdson Co. *v.* Great Northern Ry. Co., supra. But, however this

may be, in an order-notify shipment, where neither the written contract of affreightment nor the prevailing custom is such as to authorize delivery upon a private side-track of an order-notify consignee, the unauthorized placement of the goods on such a siding would not of itself amount to a delivery, since the consignee in such a case is not compelled to accept such a tender of the goods, and until he does so, the carrier remains in custody thereof and continues to be responsible therefor. Such a placement could amount to nothing more than a tender of delivery upon compliance by the order-notify consignee with the terms of the affreightment contract, and would not justify their unlawful seizure by such consignee in violation of the terms prescribed by the bill of lading.

3. In the instant case the record would not authorize a finding in favor of the plaintiff, either upon the theory of a delivery arising from a tender of the goods by the carrier and their actual acceptance by the order-notify consignee, or upon the theory that the contract of shipment required delivery upon the private side-track of the order-notify consignee, and that in thus placing the goods as directed the delivery became complete. Not only is there an entire absence of proof going to indicate that the tender of the goods for acceptance was consummated into a delivery by an actual acceptance of the goods on the part of the order-notify consignee, but, on the contrary, it appears that the shipment was in terms rejected by the order-notify consignee, and the shipper and the carrier were notified thereof prior to the placement of the car upon the side-track. Not only is there an entire absence of proof by the written terms of the contract of affreightment, or by previous conduct of the parties to the shipment amounting to an established custom, that the delivery of the goods was contemplated to be completed by placing them on a private siding of the order-notify consignee, but there is also an entire absence of proof that the siding on which the goods were placed was in fact a private side-track under the control of the order-notify consignee.

4. Even were it to be assumed that permission by the carrier for an order-notify consignee to enter a car for the purpose of inspection could amount to a conversion by the carrier (see Hines *v.* Scott, 112. Tex. 506 (248 S. W. 663); Conrad Schopp Fruit Co. *v.* Missouri Pac. R. Co., supra; Quinn-Sheperdson Co. *v.* Great Northern Ry. Co., supra), the circumstances proved by which it was sought to indicate that an inspection of the car had been made in no wise indicate that the inspection, if made, was made with the knowledge or consent of the defendant. Nor would the evidence that the contents of the car had been subsequently jointly checked over and found intact by the agent of the plaintiff and the order-notify consignee, in the presence of an agent of the defendant, amount to proof of a conversion, since the purport of such jointly conducted check and inspection would be to indicate that the goods in fact had not been delivered.

5. Under the foregoing rulings, the court did not err in directing a verdict for the defendant.

DECIDED OCTOBER 14, 1927.

Action for damages; from city court of Atlanta—Judge Dorsey. November 2, 1926.

*Winfield P. Jones,* for plaintiffs.

*Alston, Alston, Foster & Moise, W. H. Sibley,* for defendant.

JENKINS, P. J.    George C. Speir & Company brought suit in trover against the Atlantic Coast Line Railway Company for the value of 69 bales of cotton linters, alleged to have been wrongfully converted by the defendant. It is alleged that the cotton linters sued for were shipped from Hopewell, Virginia, to Clio, South Carolina, consigned to the order of the plaintiff, "notify A. J. Calhoun, Jr., at Clio." It is alleged that the cotton linters were originally purchased by the plaintiff from Calhoun, and shipped to the Virginia Cellulose Company, at Hopewell, Virginia, which company rejected the shipment, and that the plaintiff then reshipped the cotton to itself at Clio, drawing on Calhoun for the original purchase price, with the bill of lading attached to the draft. The proof shows that when the car containing the cotton arrived at Clio the railway company's agent notified Calhoun, who stated that he would not accept the shipment, and that Calhoun then wired the plaintiff that he would not accept the shipment or pay the draft. Subsequently the car was placed on a side-track on the right of way of the railway company, adjacent to Calhoun's premises, which track was used for the convenience of both Calhoun and the public. Upon receipt of notice from Calhoun that he would not accept the shipment, the plaintiff sent to Clio its agent, Bickmore, who found the car on the side-track mentioned. Calhoun, in the presence of Bickmore, opened the car of cotton, and some samples were removed for the agent of the plaintiff. The testimony as to whether the agent of the plaintiff entered the car or not is in dispute, the agent contending that he did not enter the car, and did not consent to Calhoun opening the car. It does not, however, appear that the agent objected to the car's being entered. Subsequently the car was removed from the side-track and returned to the freight depot of the railway company, where it was opened in the presence of Bickmore, Calhoun, and the agent of the railway company, and its contents checked. It was then found that all of the cotton originally shipped was in the car and accounted for. The testimony as to the condition of the seals on the car on its arrival

at Clio is in dispute; the defendant's station agent testifying that the seal on one door of the car was broken and the car door fastened with nails when the car arrived, while the agent of the plaintiff testified that he was informed by the station agent that his seals record showed both seals intact when the car arrived. It appears, without dispute, that the seal on one door was broken when Calhoun entered the car in the presence of the plaintiff's agent, and that the door was nailed up. After the car had been opened and its contents checked, neither plaintiff nor Calhoun would accept the shipment, and it was subsequently sold by the railway company for freight charges and purchased by the plaintiff. It is contended by the plaintiff that the railway company's act in placing the car on its side-track, which Calhoun contended he had "first call" on, amounted to a conversion of the cotton by placing the shipment in the possession and control of Calhoun without the surrender of the bill of lading. Upon the close of the evidence, upon motion of the defendant's counsel, the court directed a verdict in the defendant's favor; to which action exception is now taken. While the plaintiff failed to offer any proof going to show that the side-track in question was a private siding under the control of Calhoun, it does except to the admission of testimony for the defendant by its station agent that the side-track upon which the car was placed after its arrival at Clio "is the right of way of the company; it is a public side-track." Such testimony, it is contended, "was necessarily based upon hearsay or information secured by the witness from other sources than his own knowledge, and was not evidence of any deeds, contracts, private writings, or court records, such as was necessary in order to establish as a matter of law or prove as a matter of fact that the said side-track was the right of way of the defendant railroad company, or such a public right of way as that it lost its character as a private siding or private side-track."

    *Judgment affirmed. Stephens and Bell, JJ., concur.*